Council are ready, so we'll begin with Borg v. Westport May it please the court, my name is Paul Spinella, I represent the plaintiffs from the court below Mr. and Mrs. Borg and their young child By way of background, Mr. and Mrs. Borg are husband and wife psychologists who practice out of their home in Westport, Connecticut, and this case arises from the fact that from the period of January 30, 2015 through April 20, 2015, their yard, the cartilage, and the inside of their home were videotaped by the Westport police and that surveillance was continuous, it was covert, it was done without their consent, and it was done Was it done on their property? It was done on the neighbor's property So if the neighbor had sat in the yard and looked and spent the same amount of time, would the neighbor have been able to see anything different than what the camera saw? Well, if the neighbor had sat there continuously from morning to night over a three-month period You're repeating what I just asked you The question is, if a neighbor had sat there continuously, would the neighbor have been able to see everything that the video camera saw? Yes, I think so So how is this then invading an expectation of privacy? Well, I rely on practically every single case that is considered Well, you rely on them, but you may rely inappropriately So that's why I asked you All the other cases involve technology that enhances one's ability to appreciate what's going on inside someone's home A zoom lens, thermal imaging, things like that What case in our circuit has said that the simple observation by a video camera that doesn't see anything differently than what a normal citizen would see is a search? Well, it really hasn't been considered It hasn't been considered? By this court, no Ah, okay The difference, Your Honor, as was decided in Vargas v. United States and Schaeffer v. Baldwin Vargas is a district court, isn't it? Schaeffer and Vargas were district courts Okay, so they might be interesting, but not compelling Well, U.S. v. Chavez-Sanchez is a Fifth Circuit case Okay And that is very compelling What's compelling about it? What is it in that case that is exactly the same as yours? Well, the analysis is compelling In that case, it was a Well, what was the methodology used in that case? Well, in that case, the court focused in all of these cases Wasn't there a zoom capability in that case? I'm not sure that there was, Your Honor I do know that the analysis focused on the fact that there was a home at issue, which distinguishes it from these open field cases It was covert, it was electronic, it was continuous This case also involves the fact that my clients operated their practice outside of their home These patients also had an expectation of privacy They operated their practice inside their home That's correct, but these cameras were beamed inside of the house And I would ask the court to consider Well, if one drew their curtains, kept their curtains closed, one wouldn't see what any person on the street could see through the window Well, that's part of the problem here, Your Honor, is that it was covert What do you mean covert? It was done secretly A neighbor could sit behind a tree and watch How does the covert make it different? I think that there is an expectation, as these courts have considered, that no one is going to be peering into every window of their house And videotaping what occurs day in and day out My mom, you know, when I was a little boy, my mom used to say, don't stand in front of the window And so I don't understand how the fact that it's covert I mean, someone normally doesn't stand in front of or look inside people's windows But if people have windows and you're standing on the side of the street, I don't understand how that becomes a search When your mom says don't stand in front of the window, she's making a constitutional assertion there about the expectation of privacy No, she's giving good advice, because people might be looking in and not violating the Constitution They might just be doing what people do Well, what these cases note, Your Honor, is that this is not simply a snapshot It's not a situation where somebody is jumping over a fence and glancing briefly inside of a house It's the continuous nature of it that you say makes it that The continuous nature, and it's a matter of fact In fact, you're relying on what the Supreme Court decided in Jones, are you not? The various assertions in Jones In particular, Sonia Sotomayor's comment about how it is substantially different that you extend an invasion, essentially, through the window Was she writing for the majority, Justice Sotomayor? Well, Your Honor, I was just about to quote Justice Sotomayor, but you make a good point, Your Honor It is a good point. She was writing for the concurrent. She wasn't writing for the majority Well, but it was a unanimous decision in Davis True, but Jones takes off on the fact that there was a trespass That the GPS was attached to the car in violation It was a trespass of the individual's rights So, Sotomayor's analysis may be interesting, but not binding Well, I would say in response, Your Honor, that it was a unanimous decision It was 5-4 on the issue of privacy Not on the Sotomayor If I may respond, Your Honor Four justices went off on the privacy issue Where does not a majority make? Justice Scalia, who wrote the majority opinion, made room for the fact that He said that the privacy and property interests were not exclusive And that privacy may very well cover cases of surveillance Can I ask you a factual question? You made a representation in your pleadings that the cameras First one neighbor, then the second neighbor across the way Also agreed to the videotaping That they were looking directly through the windows And that, in fact, almost every room was exposed For a period of about three months Is that what the assertion was? In fact, just about the entire house was under observation for that length of time? Yes, and in order to make that point perfectly clear Judge Thompson allowed us to amend the complaint So there would be no ambiguity about this Before the motion to dismiss was even made And we made very specifically clear That it was a surveillance into every room of the house Inside of the house, as well as the curtilage Your Honor, Justice Sotomayor, if I may quote from Davis Said that the awareness that the government may be watching Chills associational and expressive freedoms And the government's unrestrained power And this, I believe, is key To assemble data that reveal private aspects Is susceptible to abuse The net result is that GPS monitoring By making available at relatively low cost Such as substantial quantum of intimate information about any person Whom the government views allows unfettered discretion And chooses to track Whoever the government chooses to track May alter the relationship between citizen and government In a way that is inimical to democratic society I read the quote Would it be any different if they had actually placed police officers there And did the same thing? If they placed police officers inside the neighbor's house, Your Honor? Well, were the cameras inside the neighbor's house? They were positioned up on the neighbor's house So let's go back If they were positioned in the same positions as the cameras There were police officers And they just did it around the clock Would you still have a case? So that the police officers were there 24 hours a day? Exactly Yes, I would say that Yes, Your Honor And I believe that's consistent with Is there something to the length of time For instance, if actually you look at United States versus Jones In particular, you look at Justice Alito Which, of course, was a dissent in that particular case He actually talks about his real concern about the privacy issues Based upon the extended period of time In which that is conducted In fact, he talks about 28 days being A very significant extension of time As to the normal search, basically Are you relying at least in part upon The fact that this was a 3-month extensive search In the people's windows Not stopped during any time of that period of time And that essentially almost suggests A sliding scale question As to whether something of this sort would be a search or not Is that your position? Well, yes, the continuous nature is important And if the question is Is there some de minimis point Where it's no longer a search I would say yes When you're hopping up, like I said, on top of a fence To look over, it's a snapshot How about 5 days? Where are you going to draw the line? Tell me where you'll draw the line I would say that anything that doesn't involve A snapshot of the house Beyond a glance Pardon me? Beyond a glance Yes, a passerby 5 minutes? All the cases talk about passerby 5 minutes? I would say a passerby The one who said snapshot, not me I'm trying to understand your rule And understand how we can convey it If that's the rule Excuse me That you want conveyed How we expect officers to understand that rule Anything that would be available to a passerby So a police officer thinks that There might be something going on in a house And he parks his vehicle Across the street And he looks inside the house for an hour That's a search? Is that? If he looks inside the house for an hour Probably not Why? But what I'm relying upon here Is what Justice Sotomayor said It's the aggregate of the collection of data That allows people Thank you As she said Counsel Yes You've reserved time I've given you more time Okay Thank you Good morning May it please the court Jonathan Zellner, counsel for the defendants' appellees Town of Westport And its municipal officers in the instant action As this court is aware From the United States Supreme Court And this circuit's jurisprudence For purposes of the Fourth Amendment What a person voluntarily exposes to public view Does not constitute a search Under the Fourth Amendment What a person knowingly Let me ask you the question actually That was just asked about the timing So this is three months, right? The windows The inspection of the video Is through the windows I guess most of the windows If not all of the windows For three months Where do you draw the line between Whether this is a search or not? Six months? A year? Does law enforcement have the ability To use poles, let's say, next door Or to get the consent of the neighbors next door And set up cameras And essentially continue to surveil a piece of property Including the inside of the house For six months? A year? I mean, is there a sliding scale here Is what my question is Well, your honor, I would say No, there is not a sliding scale And frankly to The Supreme Court's never expressed it in terms of time, has it? I mean, Alito makes an allusion to it But there's no Supreme Court precedent That expresses an expectation of privacy In terms of time That's correct, your honor This is a 12B6 motion? This is Does the complaint particularize As to how the cameras were positioned? It does not, your honor It merely alleges that Neighboring properties And apparently with the permission of these neighbors Installed these video cameras The cameras in some of the other cases Are elevated on poles Manipulated from afar Had zoom capabilities Are there any allegations that the cameras Were on elevated poles So that they might gain a perspective That a citizen on the sidewalk would not have? No such allegations, your honor Is there an allegation that the cameras Were in any way capable of zooming in And seeing in greater detail What was going on inside Than what a normal citizen would see from the street? No such allegations So it's just, it's the continuous nature That the parties assert For the period of time that the parties assert Is a violation of the expectation of privacy? That appears to be the genesis of the appellant's argument Does the complaint particularize And Judge Sessions and counsel Refer to all of the windows Does it say that windows That were not facing the street Were viewed? Frankly, your honor The amended complaint does not make any specific allegations As to which windows If any, the cameras were capable of viewing It merely alleges that The surveillance allegedly Captured details from Allegedly inside the home and its curtilage Does the Does the Complaint particularize with regard To whether there was a backyard And neighbors on the backyard Through their backyard Or cameras were placed there to look into the back of the house? No, again No specific allegations concerning placement Does it identify that the backyard Had a fence around it That was in any way blocked the view of the public From the back of the house? No, your honor, no allegations Concerning fencing, shrubbery, trees Anything of that nature And The opposing counsel Just said that Judge Thompson Allowed them to amend the pleadings To essentially represent That the Video imaging was actually Going through all of the windows Or close to all of the windows Is that correct? Judge Thompson did permit The appellants to amend their Complaint, this was after In fact we had filed the motion to dismiss The original complaint And the arguments from the original motion to dismiss Were actually applied to the amended complaint The amended complaint Merely alleged that the Alleged surveillance captured Details of John and Allison Borg's Working life and allegedly those Of their patients who visited Visited them at their home office But there were no further Allegations concerning the specific Placement of the cameras The specific windows or any specific Parts of the property That the surveillance allegedly Depicted, no allegations concerning Any fencing or any shrubbery or Anything installed around The Borg's property Those were Merely the allegations that were made in the amended complaint Counsel suggested that he was looking That the cameras were looking through Most of the windows, is that You're saying factually that's not correct In the complaint? I believe for purposes of the motion To dismiss Judge Thompson Drew that inference in the manner Most favorable to the appellant Even though there was no specific allegation In the amended complaint to that effect How is it That you haven't Argued Qualified immunity Is there a story behind this? Your honor The reason that we did not argue Qualified immunity is because it Tends to be a very fact specific Inquiry and Something that generally speaking the courts Prefer to reserve for a motion for Summary judgment So that's The reason why we didn't raise it on our Motion to dismiss I thought there was significant precedence suggesting that if you're going to raise a Qualified immunity question That it be done as early as possible Isn't that the general law? Certainly, your honor Yes, there is law That states that qualified immunity can And should be raised as soon as possible Our initial view of the Pleadings was such that At the time We were not sure that the court Would Entertain qualified immunity or might Treat it as a motion for summary judgment Potentially so we wanted to reserve that For if And when The evidentiary record in the case were to be Developed You would thereby be exposing Your clients To examination And depositions Which ordinarily you wouldn't Have to have The whole purpose of qualified immunity As judge Sessions suggests Is to avoid that If that's appropriate That's for future reference That's true, your honor And admittedly, your honor, we believe That, you know, on the merits of the Claims under rule 12b-6 That they fail to state a plausible claim Upon which they would be entitled to This surveillance Lasted four months And it appears that no crime Was discovered Is that right? Does it matter? What does the record show? The pleadings show, your honor, that Allegedly surveillance was Taken for three months There's no allegations that Anything became of this surveillance In the sense that there are no allegations That the officers Used the surveillance to obtain an arrest warrant There are no allegations that And there was no warrant Sought at any time There's no allegations about that, correct Can I ask about The standard practice of The chief call Who I guess supervises All of these As well as the town of Westport I mean, here you have a situation in which the Cameras are set up for three months Is there a Standard process by Which deadlines Are put in terms of How long these cameras Are set up? Your honor, admittedly At this time, I do not know the answer to that Specific question I would note that the complaint Merely contains threadbare Assertions and allegations concerning Allegedly unconstitutional Policy or custom with respect to the town Of Westport when it comes to The use of surveillance Video surveillance, there are no specific Allegations about any particular policy Or how it's administered So to the extent the Appellants have tried to make a claim against the town Of Westport for Municipal liability under section 1983 Or a failure to train It fails to state a plausible claim On that basis So as has been discussed What a person knowingly exposes to public View, even in the person's home And the Supreme Court has recognized this Does not garner Fourth Amendment protection Generally the police are free to observe Whatever may be seen from a Place where they are lawfully entitled to be And as the pleadings in this case Show Is there a significant difference between Inspection of A general background Like a backyard As opposed to something within the home Or close to the curtilage And I'm thinking about the Serralo case Which was decided quite a while ago But there was a flight Over a backyard And the Supreme Court made a very clear Distinction between The subject matter Of where the shot The pictures went And said This was just the backyard And so that's less of a privacy interest But when you get within the curtilage And in fact when you get up close To the house That it suggests That there must be a Greater degree of privacy In those Particular areas Is that a matter of concern? The fact that there is a distinction between Looking into the backyard As opposed to looking Into the inside of the house I don't necessarily believe That there is, your honor And I think the reason for that is Well certainly If the government physically occupies property In the sense that it trespasses On plaintiff's or defendant's property Or as was the case in United States v. Jones It installs a GPS monitoring device on Somebody's effects or property that they own or operate That does raise Serious Fourth Amendment concerns But when we're talking about Such as in the case in Where the government is Flying in publicly navigable Airspace and observing below Aspects of The defendant's property That are exposed to public view that anybody could see From that distance or in this case Where surveillance Footage taken from neighboring properties Capture details where there are no allegations That it was not Observable from those same properties I don't believe that concern is recognized Because the plaintiff or the defendant Just made the Decision to allow that to be Subject to view from Publicly viewable places Thank you Go ahead If I'm in a house And if I theoretically Decide not to put my Shades down at any time I'm essentially waiving expectation of What or who Could be looking through my Windows if in fact That viewing was In fact over an extended period of time I would say your honor that That is a risk that somebody Runs in light of the supreme court's and the second Circuit's case law I mean the case law is clear that When somebody Exposes details of their home or property To public view through a door through a window Whatever it may be and Law enforcement is lawfully observing it from A vantage point where they're entitled to be It's not a search under the fourth amendment And it doesn't receive the fourth amendment's protection Thank you Just a few quick points In the time remaining to me First of all as we all Know this is a motion To dismiss and Therefore not only are all Facts deemed In the plaintiff's favor But inferences from those facts Especially the senses This particular court is recognized In irish lesbian and Gay organizations versus Giuliani in a civil rights case That's particularly so So that unless it appears Did you file a copy of the amended complaint with the In the appendix With who again Yes it is The cases say that Motion to dismiss cannot be Granted unless it appears The plaintiff can prove no set of facts In support of his claim Which would entitle him to relief We you know This is not a motion for summary judgment This is not A fact pleading Requirement we Said these cameras were Pointed inside the house and saw What was inside of the house in the curtilage The angle of the camera And so forth that's a fact Pleading Violate the constitution If these cameras saw Something that your clients were doing in the yard Yes that's the Curtilage it would yes So if they're standing in the front yard And your client struck Someone and the camera saw That that would be illegal Search yes Oh okay So okay So you're saying that even if Even if they're outside the house And they're standing in the front yard on the street Not inside the house No Where whatever they say to each other is private But where they Standing in the front yard And these cameras Pick up something that that's That's an illegal search I'm saying that if it's in the Curtilage and that is I know where the curtilage is In New York to flying over the curtilage Is violates the New York Constitution there's a higher expectation of Privacy in New York under state constitution Than there is in the federal but in any event So you're saying it would You don't draw any distinction between That and looking through a window And seeing the exact same conduct Well I will say that in the cases that have Considered this they've looked first Through the curtilage What's the expectation of privacy in your front yard It is You have an expectation Against the Continuance covert And I say covert because there's no opportunity To protect yourself Continuance Electronic Surveillance so that in the words of Justice Sotomayor It generates a precise comprehensive Record of a person's Public movements that reflects The wealth about her family Political professional Which is important here religious And sexual associations Remember a case called Payton versus New York The fourth it's a fourth amendment Arrest case the Supreme Court Made a very clear distinction Between the expectation of privacy Within the home as opposed To within the curtilage or outside Of the home and they basically Represented or found That when you arrest somebody within the home That is a higher level of Significant requirement Of proof to justify That kind of Invasion of privacy Now why doesn't that same principle Apply when you're asked the distinction About whether it's different In the home as opposed to in the front yard Isn't there a Major difference between those Yes and what I was about to say Is that the cases that have considered this Have said yes Curtilage is protected but especially The home when there is Appearing inside of the home And in one case There was a question about On a summary judgment motion Whether they could really look inside The home but they could see the curtilage In the and the court said That it was Still a violation But it would be especially so If it was inside Of the home Thank you Mr. Spinella We'll reserve the decision Say one last thing Thank you Your Honor